UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:21-CR-00528-HEA |
| BRITTISH WILLIAMS, | ) |
| Defendant. | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Diane Klocke, Special Assistant United States Attorney for said District, and files its sentencing memorandum.

## HISTORY OF THE CASE AND PLEA AGREEMENT

On September 22, 2021, Defendant was charged in an eighteen count Indictment, charging bank fraud, aggravated identity theft, misuse of a Social Security Number, false statements, and wire fraud. Defendant was arraigned and released on bond on October 7, 2021. A bond violation report was filed by Defendant's Pretrial Services officer in March 2022, for which Defendant was ordered to participate in the Location Monitoring Program with Curfew. DCD 24. Defendant also filed several motions to modify the conditions of her release and to travel. DCD 22, 27, 28, 29, 35, and 40.

On May 24, 2023, Defendant pled guilty to Counts 1 through 15 of the Indictment, with an agreement for the Government to dismiss counts 16 through 18 at the time of sentencing. DCD 80.

1

Defendant also admitted to relevant conduct that had taken place between the time of the indicted conduct and the date of plea.

Pursuant to the PSR, Defendant's United States Sentencing Guidelines total offense level is 26, with a criminal history category of I. DCD 88 ¶26, ¶69. Neither Defendant nor the Government has filed an objection to the PSR or the calculations contained therein. Therefore, the guideline range of punishment for Counts 1 through 15, including the relevant conduct, is 63 to 78 months. Id. ¶101.

The Government now respectfully requests the Court sentence Defendant to a guideline term of imprisonment of 70 months for Counts 1 through 15. In support thereof, the Government submits the information in this sentencing memorandum for the Court's consideration.

## SENTENCING STATUTES AND GUIDELINES

Per 18 U.S.C. § 3553(a): "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant…"

A violation of 18 U.S.C. § 1028A carries a mandatory sentence of two years of imprisonment, and the guideline sentence is the term of imprisonment required by statute. USSG § 2B1.6. The two-year term of imprisonment is to run consecutively to any other term of imprisonment. 18 U.S.C. § 1028A; USSG § 2B1.6 Application Note 1(A). When a defendant has multiple convictions under 18 U.S.C. § 1028A, the terms of imprisonment on such counts may, in the discretion of the court, run concurrently, in whole or in part, with each other. 18 U.S.C. §1028A(b)(4) and USSG §2B1.6 Application Note 1(B).

**NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The fraud charged in this Indictment, to which Defendant admitted guilt, was multi-faceted. First, Defendant admitted to multiple counts involving tax fraud. Starting at least in 2016, Defendant owned multiple businesses which generated hundreds of thousands of dollars more in gross receipts than what Defendant reported to the IRS. DCD 80 P.4. Moreover, in the same time frame, Defendant used the names and Social Security Numbers of her cousin's children in order to claim the children as dependents for multiple tax years, despite not providing or otherwise caring for these children. *Id*. Defendant's cousin told federal agents that Defendant offered her a new couch in exchange for $400 and the children's personal identifying information. Defendant's cousin stated she was not aware of what the information would be used for, but Defendant knew the cousin needed a new couch but was unable to afford or finance one.

In addition to this tax fraud, in at least 2017 through 2019, Defendant committed fraud with multiple banks and creditors. Part of the scheme was using a number that was not her Social Security Number to open bank accounts and/or lines of credit. Some of these accounts and lines of credit were in the names of her businesses, and some were in her own name. After opening the

3

bank accounts, Defendant then deposited checks from the accounts of other people, without their knowledge or permission. Defendant then withdrew the money in cash so that when the checks were returned as fraudulent, her bank account was overdrawn. These accounts were then closed by the banks and the banks absorbed the losses. DCD 80 P.4-5.

The total amount of loss for the above-described schemes was $29,366 for the IRS, $28,537.20 for creditors, and $23,850.91 for banks that covered Defendant's fraudulent check deposits.

**RELEVANT CONDUCT**

Defendant was interviewed by federal agents relative to the above-described conduct on September 10, 2019. Following this interview, Defendant was not deterred from additional fraudulent behavior.

In 2020 and 2021, Defendant submitted nine separate fraudulent Economic Injury Disaster Loan (EIDL) applications, pursuant to the CARES Act. DCD 80 P.8. Defendant also submitted Paycheck Protection Program applications, resulting in a total loss to the Government of nearly $200,000. *Id*. These loans were intended to help business owners that needed extra money to help them get through the COVID-19 pandemic. Defendant did not need this money as she did not have any actual businesses harmed by the pandemic. Instead, Defendant used these funds for her personal lifestyle. *Id*.

Even more egregiously, in January 2022, *after her indictment and arraignment in this case*, Defendant applied for the California COVID-19 Rent Relief Program. Defendant claimed a household income lower than what she was being paid and reported a reduction in hours that led to her need for rent relief. DCD 80 P.8-9. However, Defendant was receiving money from her

4

employer specifically intended to pay her rent; the amount she was paid was higher than the rental amount listed in her rental contract. *Id.* P.9. On or about July 1, 2022, a rent relief check was issued to Defendant. Defendant deposited the check a few months later, in September 2022. DCD 80 P.9. Notably, despite Defendant collecting a check from her employer to pay her rent, and a check from the State of California for rent relief, Defendant failed to pay the rent due at her California apartment. Gov. Exhibit 1.

Both before and after her arraignment in this case, Defendant also actively defrauded an insurance agency for approximately $139,479. She also has not paid her taxes and has fraudulently claimed to be exempt from filing taxes in order to avoid having taxes withheld from her paychecks. DCD 80 P.9-10.

## HISTORY AND CHARACTERISTICS OF DEFENDANT

The Defendant has a lengthy history of owning and operating different businesses. However, these businesses do not have a positive record. For example, Defendant registered Love of Labels with the State of Missouri in 2013 (Gov. Exhibit 2) and Gossip Girl in 2016 (Gov Exhibit 3). In 2015, the Better Business Bureau stated it had received more than 50 complaints against Love of Labels due to its failure to fulfill orders. Gov Exhibit 4. Despite Williams' promise to improve business practices, the BBB continued to receive similar complaints from people across the country. *Id.*

Defendant also offered services as a "business coach" as part of her Gossip Girl business. An IRS agent conferred with Defendant via WhatsApp as part of this "coaching" business in an undercover operation in 2019. During that call, Defendant reported to the Agent that she makes up to $250,000 per month selling clothing online. Defendant also mentioned that having a "good

5

accountant" could have the agent paying less in taxes, and that there was no need to pay taxes to the IRS in the first two to three years of having a business open, as a business owner could just claim that they operated at a loss.

Despite these claims, Defendant never reported such a high amount of income to the IRS. Moreover, Defendant never reported her income from her pre-indictment reality television appearances to the IRS.

The Defendant also has a history of passing bad checks, not just the fraudulent checks that involved in this Indictment. DCD 88 ¶ 71. In May 2016, Defendant posted a picture of herself on Instagram with a large stack of cash (Gov. Exhibit 5), which is commonly seen in fraudulent check cashing schemes.

After her arraignment in this case, Defendant was placed on bond and, for a time, the location monitoring program. DCD 24-1. While Defendant was on bond, she was granted rather generous bond conditions to allow her to travel from the Eastern District of Missouri to California in order to film a new season of her reality show. Despite this allowance, Defendant had unauthorized travel to Dallas, Texas. DCD 24-1 P.2. When asked about this violation, Defendant said it was a last-minute decision, and she did not want to ask permission because she did not think the travel would be authorized. *Id*. Moreover, while being asked about the violation, Defendant admitted to being in Houston, Texas at the time. *Id*. When asked about this additional unauthorized travel, Defendant stated she was celebrating her friend's birthday, and she had never missed the friend's birthday. *Id*.

In addition to these violations, the Defendant committed multiple laws violations while on bond, as the above-described insurance fraud and California COVID-19 Rent Relief fraud took

6

place while Defendant was on bond for this offense. The Government filed a Motion to Revoke Defendant's Bond based upon the unauthorized travel violations and the alleged insurance fraud. DCD 44. Magistrate Judge Shirley Padmore Mensah held a hearing on this motion as well as Defendant's motion to Modify Conditions of her Release. DCD 49. The Government's Motion was denied, and Defendant's Motion was granted. *Id*. Notably, this hearing took place on July 7, 2022, only six days after Defendant's rent relief check was issued.

Defendant has filmed multiple videos of herself since the arraignment in this case. One such video was posted online prior to Defendant's change of plea hearing. *See* https://www.youtube.com/watch?v=KEBuiOxkfX0. During that video, Defendant stated that she had a cleaning lady at her house, and she was planning to get a massage, manicure, and pedicure later that same day. Regarding her court case, she stated she felt God was on her side. Defendant further stated that she did not consider herself a single mother, and that she had a lot of help from her mom and her daughter's father in taking care of her daughter.

Following the Defendant's plea hearing, another video was posted (*See* https://www.youtube.com/watch?v=Jdi3DiY_7eA) wherein Defendant claimed she pled to things in Court that she did not actually do so that she could see her daughter. Defendant also discussed wanting to start a new business in order to help people who are going through the criminal justice system without the support that she has. She reported wanting to start a podcast about it. Defendant's pretrial services officer did report that Defendant is preparing to start a podcast in Miami, for which she has been allowed to travel to Miami while on bond.

Finally, as noted in the PSR, despite her negative net worth (DCD 88 ¶ 94), anticipated restitution of hundreds of thousands of dollars in the instant case, and the multiple civil judgments

7

against Defendant (DCD 88 ¶ 95-97), Defendant currently drives a leased 2021 Mercedes and lives in a four-bedroom, three-bathroom home with a three-car garage with her daughter and mother (DCD 88 ¶ 75). Notably, Defendant attempted to report the lease of the Mercedes as fraud/identity theft to the credit bureaus (Gov. Exhibit 6 PP.3-4), despite posting multiple images on Instagram of her taking possession of said vehicle (Gov. Exhibits 7 and 8).

In summary, over the past decade Defendant has continuously made her income by defrauding individuals, businesses, and the Government, and by refusing to pay her bills. Defendant continues the fraud by refusing to pay taxes for the income she does receive. Defendant uses all of the money to keep up appearances and otherwise fund her own extravagant lifestyle. Defendant's theft and deceit has never been about desperation or ignorance, it has always been about her own greed.

Defendant's unauthorized travel and continued fraudulent acts while she was on bond for the instant offense is even more egregious and demonstrates that Defendant was not deterred by the pending criminal charges or by being on bond. Defendant's extremely casual attitude toward her bond conditions shows she did not respect the seriousness of the charges, the seriousness of her bond conditions, or this Court. Moreover, this conduct shows that Defendant will commit fraud again, as soon as she is able, because that is what she has always done. The fact that Defendant now wishes to parlay her the current criminal matter into a new business venture, particularly given Defendant's historically fraudulent conduct in her businesses, also shows a great disrespect for the seriousness of these offenses and the sentence she is now facing.

## GOVERNMENT'S REQUESTED SENTENCE

The Government respectfully requests the Court sentence Defendant to a guideline term of imprisonment of 70 months for Counts 1 through 15 of the Indictment. The Government contends that this sentence is sufficient but not greater than necessary to satisfy the objectives of 18 U.S.C. § 3553(a) and takes into consideration the nature and circumstances of the offense and the relevant conduct, the history and characteristics of Defendant, the seriousness and just punishment for the offenses, the deterrence to future criminal conduct, and protecting the public from further crimes of Defendant.

The facts of the case and the relevant conduct make it very clear: Defendant did not care that what she was doing was illegal or fraudulent. Defendant only cared about getting money to build up her own house of cards. Defendant was spending well beyond her means, for no apparent reason. Even after being arraigned for her fraudulent conduct in this case, Defendant was not deterred from committing additional fraud. This conduct illustrates a careless disregard toward her own crimes and the victims left in her wake.   This continued disregard for this Court and her bond conditions after her arrest further demonstrates her careless attitude regarding her own conduct and the seriousness of her charged offenses.

The Government contends that Defendant has not given adequate reason or evidence for a downward departure or variance in this matter. Defendant was already given some benefit during the plea negotiations, when the Government agreed to dismiss the Aggravated Identity Theft counts that were part of the original indictment. That agreement alone meant that Defendant's sentence would automatically be reduced by at least 24 months, but possibly more, as the Court could have ordered the multiple Aggravated Identity Theft counts run consecutive to each other

9

had Defendant pled to them. Though she did not plea guilty to those counts, Defendant still admitted to the conduct in the language of the plea agreement.

In light of all of the above, a guidelines sentence of 70 months is appropriate.

## CONCLUSION

All of these facts are essential to understanding Defendant's relevant conduct, history, and characteristics. This Court should consider this conduct when sentencing Defendant, as well as the need to protect the public, particularly financially, in sentencing Defendant.

WHEREFORE, the Government requests this Court to carefully consider all of the above in fashioning an appropriate sentence for Defendant.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

   /s/Diane E.H. Klocke
DIANE E.H. KLOCKE, #61670MO
Special Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200
Diane.Klocke@usa.doj.gov

## **CERTIFICATE OF SERVICE**

  I hereby certify that on October 4, 2023, the foregoing was filed electronically with the Clerk of the Court and served upon counsel of record.

                *s/ Diane E.H. Klocke*
                DIANE E.H. KLOCKE, #61670MO
                Special Assistant United States Attorney